# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued May 8, 2008          Decided July 11, 2008

No. 06-3091

UNITED STATES OF AMERICA,
APPELLEE

v.

EMMETT SPENCER,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00046-01)

---

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender.

*Matthew E. Price*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III*, Assistant U.S. Attorney.

Before: TATEL, BROWN, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: This is a Fourth Amendment exclusionary rule case. After finding Emmett Spencer in his car with drugs, the police obtained a search warrant from a D.C. Superior Court judge in order to search Spencer's house. The officers executed the warrant and seized heroin, firearms, ammunition, and cash. After he was indicted in U.S. District Court for various federal drug and gun offenses, Spencer moved to suppress the evidence found in his house. He contended that the search warrant was not supported by probable cause; that the police affidavit supporting the warrant omitted material facts; and that probable cause for the search warrant had dissipated between the time the warrant was obtained and the time it was executed. The District Court rejected Spencer's arguments. We affirm. *See United States v. Leon*, 468 U.S. 897 (1984).

I

While patrolling a "high drug area," two D.C. police officers saw Emmett Spencer walk back and forth several times between a restaurant and his parked car. Warrant at 2, Joint Appendix ("J.A.") 14. The officers ran a check of the license plate on Spencer's car and learned that the car and the license plate did not match. Spencer drove away; the officers followed and eventually pulled him over. As one officer approached the car, he saw a female passenger in the back appear to tuck something into the seat. The officer asked Spencer and the passenger to step out of the vehicle. The officer noticed that Spencer was holding cash crumpled in his

hand; the officer also saw on the backseat an empty medium-sized ziplock bag with a red apple print on it. When the officer searched the vehicle, he found in the backseat another medium ziplock bag with a red apple print – but this one contained 70 smaller ziplock bags of heroin, packaged in bundles of 10. He also found other bags elsewhere in the car, one under the backseat and one in the glove compartment, both of which contained heroin (the bag in the glove compartment also had a red apple print on it). In addition, he discovered two more of the same kinds of bags with red apple prints in Spencer's front pockets, although those bags contained no drugs. The officer arrested Spencer and the passenger. They were charged with possession with intent to distribute heroin. *See* D.C. CODE § 48-904.01(a)(1).

A police investigator, relying on information from the arresting officer, then sought a search warrant for Spencer's house and submitted a supporting affidavit to a D.C. Superior Court judge. The affidavit described the facts and also noted that Spencer had a prior conviction for possessing with intent to distribute cocaine and a pending case against him for possessing heroin. Based on the affidavit, the judge found probable cause to believe that Spencer's house contained heroin and other evidence of drug dealing. The judge issued a warrant for the police to search the house. The warrant required execution within 10 days.

Three days later, a different D.C. Superior Court judge held a preliminary hearing on the initial D.C. drug charge against Spencer (that is, the charge based only on what had been found in the car). The judge dismissed the drug charge against Spencer for lack of probable cause, concluding that probable cause to arrest for possession with intent to distribute existed only with respect to the female passenger in the car.

One week after the preliminary hearing, the police executed the search warrant at Spencer's house. There, they discovered and seized heroin, firearms, ammunition, and cash.

Based on the evidence found in the house, the Government obtained a four-count federal indictment charging Spencer with possessing a firearm as a felon, possessing ammunition as a felon, possessing with intent to distribute heroin, and possessing a firearm in furtherance of a drug-trafficking offense. *See* 18 U.S.C. § 922(g)(1); 21 U.S.C. § 841(a)(1), (b)(1)(C); 18 U.S.C. § 924(c)(1). Spencer moved to suppress the evidence seized from his house. The District Court denied the motion. Pursuant to an agreement with the Government, Spencer then entered a conditional guilty plea, reserving his right to appeal the Fourth Amendment issue. *See* FED. R. CRIM. P. 11(c)(1)(C). The court sentenced Spencer to 37 months in prison followed by three years of supervised release.

## II

On appeal, Spencer raises three distinct arguments. First, he argues that the police affidavit supporting the warrant did not establish probable cause to believe that drugs would be found in his house. Second, he argues that the affidavit omitted three material facts. Third, he argues that even assuming the search warrant was initially valid, probable cause dissipated between the time the warrant was obtained and the time it was executed because the underlying D.C. drug charge was dismissed in the interim.

As a general matter, Spencer's contentions run headlong into Supreme Court precedents establishing deferential judicial review in cases where the police conducted a search

with a warrant. We briefly review those principles before turning to Spencer's specific arguments.

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Supreme Court has applied the exclusionary rule to certain Fourth Amendment violations. But as the Supreme Court has stated, "the Fourth Amendment has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *United States v. Leon*, 468 U.S. 897, 906 (1984) (internal quotation marks omitted). The "substantial social costs exacted by the exclusionary rule for the vindication of Fourth Amendment rights have long been a source of concern," and "[p]articularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system." *Id.* at 907-08.

Those principles carry particular force when, as here, the police obtained a warrant before executing a search. To begin with, we give "great deference" to the issuing judge's probable-cause determination. *Illinois v. Gates*, 462 U.S. 213, 236 (1982) (internal quotation marks omitted). Even if we disagree with the judge's probable-cause determination after giving it "great deference," that disagreement alone does not justify exclusion of evidence. That is because the "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges." *Massachusetts v. Sheppard*, 468 U.S. 981, 990 (1984)

(internal quotation marks omitted). And a police officer is ordinarily entitled to rely on the magistrate's conclusion: "In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination . . . ." *Leon*, 468 U.S. at 921. So long as the officer relied in objective good faith on the issuing judge's determination, reviewing courts may not apply the exclusionary rule. *Id.* at 922-23. As a result, the "degree of police deference to the magistrate which is perceived by courts as reasonable under *Leon* exceeds significantly that 'great deference' owed the magistrate by reviewing courts under *Gates*." 1 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 1.3(f), at 97-98 (4th ed. 2004) (footnote omitted). The basic rule, in short, is that "the police, having turned the probable cause decision over to another person, . . . are generally entitled to presume that the magistrate knows what he is doing." *Id.* at 97 (footnote omitted).

There are a few narrow exceptions to the *Leon* principle, however, two of which Spencer invokes here. Suppression remains appropriate if the affidavit supporting the warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks omitted). And suppression also remains "an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* (citing *Franks v. Delaware*, 438 U.S. 154 (1978)). This latter exception also has been held to apply under certain circumstances to material omissions, *see United States v. Johnson*, 696 F.2d 115, 118 n.21 (D.C. Cir. 1982) – "material" meaning that their "inclusion in the affidavit would defeat probable cause." *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990).

According to the Supreme Court, "[w]hen officers have acted pursuant to a warrant, the prosecution should ordinarily be able to establish objective good faith without a substantial expenditure of judicial time." *Leon*, 468 U.S. at 924. That observation is true here, as Spencer's arguments plainly do not fall within the *Leon* exceptions.

*First*, as to Spencer's argument about the sufficiency of the police affidavit, we must determine whether the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (internal quotation marks omitted). We think not. The 70 small bags of heroin found in the backseat of Spencer's car, the bag of heroin found in the glove compartment, and the bags found on Spencer's person together suggested that Spencer was engaged in drug dealing. *See Maryland v. Pringle*, 540 U.S. 366, 372-73 (2003). We have held that observations of drug dealing outside the home provide probable cause for a warrant to search the drug dealer's home. *See United States v. Thomas*, 989 F.2d 1252, 1255 (D.C. Cir. 1993). In general, "observations of illegal activity occurring away from the suspect's residence, can support a finding of probable cause to issue a search warrant for the residence, if there is a reasonable basis to infer from the nature of the illegal activity observed, that relevant evidence will be found in the residence." *Id.*; *see also United States v. Johnson*, 437 F.3d 69, 71-72 (2006). Common experience suggests that drug dealers must mix and measure the merchandise, protect it from competitors, and conceal evidence of their trade – such as drugs, drug paraphernalia, weapons, written records, and cash – in secure locations. For the vast majority of drug dealers, the most convenient location to secure items is the home. After all, drug dealers don't tend to work out of office buildings. And no training is required to reach this commonsense conclusion.

Based on these facts, we agree with the issuing judge that there was probable cause to justify the search of the house. But even if we didn't agree, the key point for purposes of our *Leon* review is that we see no plausible basis for finding the affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks omitted).

*Second*, Spencer argues that the affidavit supporting the warrant misled the issuing judge because it omitted three material facts about his arrest. According to Spencer, these omitted facts would have suggested that the female passenger, and not Spencer, was the drug dealer: (i) the larger ziplock bag containing 70 smaller ziplock bags of heroin was in the backseat next to the female passenger, not next to Spencer; (ii) the female passenger entered Spencer's car shortly before police stopped the car; and (iii) the ziplock bag in the glove compartment contained only a small amount of heroin. Spencer acknowledges that the affidavit itself did not contain any misstatements; rather, the issue is whether these were material omissions from the affidavit.

As to the location of the 70 bags of heroin, we do not believe that the affidavit contained an omission; the affidavit specifically said the bags were "recovered in the rear seat" and that the female passenger appeared to be tucking something into the "rear seat area." Warrant at 2, J.A. 14.

As to the fact that the female passenger had just entered Spencer's car, we do not see the materiality of the omission. That fact would not negate the probable cause to believe that Spencer was selling drugs either with or to the passenger. *See Pringle*, 540 U.S. at 373 ("[A] car passenger . . . will often be engaged in a common enterprise with the driver, and have the

same interest in concealing the fruits or the evidence of their wrongdoing.") (internal quotation marks omitted).

Finally, the fact that the amount of heroin in the glove compartment was relatively small was immaterial given the amount of heroin throughout the rest of the car.

According to Spencer, the female passenger was the drug dealer, and these three "omitted" facts together would have tipped the balance in convincing the issuing judge that Spencer was just a buyer and that a search of his house therefore was not justified. Spencer might have a point if the issuing judge had to believe beyond a reasonable doubt or by a preponderance that Spencer was a drug dealer. But the standard is probable cause, and we cannot say that the "omitted" facts individually or together negate the "fair probability" that Spencer was a dealer, not just a buyer. *Gates*, 462 U.S. at 238.

*Third*, Spencer argues that even if the officers reasonably believed that the search warrant was initially valid and based on probable cause, the probable cause dissipated when a different D.C. judge dismissed the initial D.C. drug charge against Spencer. We disagree. It is true that when officers learn of new *facts* that negate probable cause, they may not rely on an earlier-issued warrant but instead must return to the magistrate – for example, if the police learn that "contraband is no longer located at the place to be searched." *United States v. Grubbs*, 547 U.S. 90, 95 n.2 (2006). But the dismissal here is not such a "fact." Rather, it was a legal conclusion reached by a different judge in a different matter; such legal disagreement is hardly surprising given that reasonable minds "frequently may differ on the question" of probable cause. *Leon*, 468 U.S. at 914. Assuming it were a fact, it was not material because it would not negate probable

cause. In addition, as Spencer's counsel correctly acknowledged at oral argument, the dismissal of the D.C. charge against Spencer would not carry estoppel effect in a separate search-warrant proceeding. *Cf. Zurcher v. Stanford Daily*, 436 U.S. 547, 558-59 (1978).

\* \* \*

We affirm the judgment of conviction.[*]

*So ordered.*

---

[*] In criminal appeals, this Court often receives excellent briefing and oral argument from both the Government and the Federal Public Defender's office. The briefing and oral argument in this case were particularly thorough and well-done; we thank counsel for their efforts.