RENDERED: APRIL 4, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2024-CA-0012-MR

RONALD WILLIAMS                                                    APPELLANT

APPEAL FROM GRAYSON CIRCUIT COURT
v.       HONORABLE KENNETH HAROLD GOFF, II, JUDGE
ACTION NO. 21-CR-00262

COMMONWEALTH OF KENTUCKY                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, L. JONES, AND McNEILL, JUDGES.

EASTON, JUDGE: Ronald Williams ("Williams") entered a conditional guilty plea to several drug-related charges. After a remand by this Court for necessary findings of facts, Williams again appeals the Grayson Circuit Court's order denying his motion to suppress evidence obtained pursuant to a search warrant of his residence. Finding no error, we affirm.

# FACTUAL AND PROCEDURAL HISTORY

In July 2021, a search warrant was issued for Williams's residence, vehicle, and person. When this search warrant was executed, illegal drugs were found, which led to the charges against Williams. In January 2022, Williams filed a *pro se* motion which stated in full: "[T]he Defendant Ronald Dale Williams Jr. comes before the Grayson County Court to file a motion for a *Franks*[1] hearing. This motion is to be heard on the next available court date." Williams's appointed counsel later explained to the circuit court that the motion was to suppress evidence because Williams believed the search warrant was insufficient to state probable cause.

On March 15, 2022, the circuit court held a suppression hearing. Detective Jesse Townsend ("Detective Townsend") with the Leitchfield Police Department assigned to the Greater Hardin County Narcotics Task Force testified about the affidavit he prepared in applying for a search warrant of Williams's residence. Detective Townsend relied on information provided to him separately by a confidential informant ("CI"), an unnamed woman who previously resided

---

[1] Referencing *Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676, 57 L. Ed. 2d 667 (1978), in which the United States Supreme Court held "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."

with Williams, and two other identified women who claimed their friend was missing and was at Williams's residence.

The CI told Detective Townsend that a drug dealer named "JJ" lived at Williams's address. The CI had neither been to Williams's residence nor personally bought drugs from him. The CI also reported that a woman had been traded for drugs to Williams. Another unnamed woman reported that she had lived with Williams and claimed to have been drugged and raped by Williams. She stated Williams keeps drugs hidden in his residence, as well as in a "fanny pack" on his person.

Williams testified during the suppression hearing. He claimed the woman who alleged he drugged and raped her was an ex-girlfriend who made the report because he had kicked her out. He also denied that any missing women had ever been located at his house or that any law enforcement had come to investigate missing women. Williams did acknowledge that he lived at the address listed on the search warrant.

Williams argued the affidavit did not contain sufficient information to establish probable cause. He claims the CI never gave any first-hand information that Williams was selling drugs. Williams also attacked the credibility of the unnamed woman in the affidavit, as no sexual assault investigation or charges came from her allegations. The Commonwealth countered that the affidavit

contained three separate reports of drugs being sold from Williams's residence. The circuit court orally ruled that the motion for suppression was denied.

In April 2022, Williams entered his conditional guilty plea. He pled guilty to amended charges, for a total of ten years to serve at 20% parole eligibility. He reserved his right to appeal the suppression issue.

Williams appealed the denial of his motion to suppress. He argued that the circuit court failed to make any findings of fact and conclusions of law, and that there was a lack of probable cause for the issuance of a search warrant. This Court vacated and remanded[2] to the circuit court to enter a new order containing findings of fact and conclusions of law as required by CR[3] 52.01.

The circuit court entered a new order on October 6, 2023, again denying Williams's motion to suppress. This order contained findings of facts and conclusions of law to support the ruling. The circuit court determined that the unnamed woman who provided the report had personal, detailed knowledge of the residence, as well as the manner and method of concealment of drugs. The circuit court believed this report, when combined with the CI's information provided to Detective Townsend and the other reports, was enough to establish probable cause.

---

[2] *Williams v. Commonwealth*, No. 2022-CA-0612-MR, 2023 WL 4982099 (Ky. App. Aug. 4, 2023).

[3] Kentucky Rules of Civil Procedure.

The circuit court further determined that, even if the search warrant was defective, the "good faith exception" would apply.

This appeal follows. Williams again challenges the circuit court's ruling that there was sufficient evidence to establish probable cause to issue the search warrant. We will develop any further relevant factual details in our following analysis.

## STANDARD OF REVIEW

"A trial court's denial of a motion to suppress is reviewed under a two-prong test. First, we review the trial court's findings of fact under the clearly erroneous standard. Under this standard, the trial court's findings of fact will be conclusive if they are supported by substantial evidence. Second, we review de novo the trial court's application of the law to the facts." *Rhoton v. Commonwealth*, 610 S.W.3d 273, 275-76 (Ky. 2020) (footnotes omitted).

## ANALYSIS

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. Section 10 of Kentucky's Constitution is essentially the same. The Kentucky Constitution does not provide

any greater protections than the Fourth Amendment to the federal Constitution. *Hunter v. Commonwealth*, 587 S.W.3d 298, 305 (Ky. 2019).

"Whether probable cause exists is determined by examining the totality of the circumstances. Furthermore, the test for probable cause is whether there is a fair probability that contraband or evidence of a crime will be found in a particular place. Probable cause does not require certainty that a crime has been committed or that evidence will be present in the place to be searched." *Moore v. Commonwealth*, 159 S.W.3d 325, 329 (Ky. 2005), *as modified* (Apr. 21, 2005) (citations omitted). When reviewing a motion to suppress, a court must look at the "'totality of the circumstances' presented within the four corners of the affidavit." *Commonwealth v. Pride*, 302 S.W.3d 43, 49 (Ky. 2010).

Williams argues the affidavit in this case was a facially deficient "bare bones" affidavit. "An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996).

The affidavit here contained information from three separate sources. The first source was an unnamed woman who claimed to have been drugged and raped by Williams. She informed law enforcement that Williams uses approximately two ounces of methamphetamine a week, and that he keeps it and

other drugs in his residence. She claimed he specifically hid drugs inside vents in the home, particularly bathroom vents. Drugs were later found near such a vent when the search warrant was issued. She stated Williams has cameras both inside and outside of the home. This woman also told law enforcement she had been at Williams's residence about seven days prior to making her report. She claims she did not report earlier because she had an outstanding arrest warrant.

Detective Townsend's second source of information came from a CI, who told him in mid-June 2021 that a large drug dealer lived on Shrewsbury Road in Leitchfield. This CI gave Detective Townsend directions to the location, which was Williams's address. The CI claimed to know this drug dealer only by the nickname "JJ." A few weeks later, this CI told Detective Townsend that a woman had gone missing and was believed to be at JJ's residence. The CI stated this woman had been traded for drugs by another woman ("Nicole"). Detective Townsend stated he has worked with the CI in the past, and the CI had provided consistently reliable information.

Around this same time, Detective Townsend was given his third source of information for the search warrant. He was advised by local law enforcement that two women had made a report that their friend was missing and was believed to be at Williams's residence. Detective Townsend wrote in the affidavit that the friend was in fact located at Williams's residence and that the

reporting women themselves appeared to be under the influence of drugs, although the specific source of this information was not provided to Detective Townsend. In addition to these reports, Detective Townsend included within his affidavit a summary of Williams's criminal history, which included both a drug-related felony and a sex offense.

Williams first attacks the reliability of the CI Detective Townsend relied upon. The CI had not been inside Williams's residence, nor had the CI purchased drugs from Williams. Since it does not seem as if the CI had personal knowledge of the information given to Detective Townsend, the CI's information must have been learned through other sources. Yet "hearsay information may be the basis of probable cause to search and there is no need for a specific showing of a named informant's reliability." *Beckam v. Commonwealth*, 284 S.W.3d 547, 549 (Ky. App. 2009) (internal quotation marks omitted).

Had this CI been Detective Townsend's only source of information in his affidavit for the search warrant, it might have been inadequate to establish probable cause. Because it was determined the CI did not have personal knowledge of the information given to Detective Townsend, more information may be needed to get past "bare bones" conclusions. It is unknown how the CI knew a drug dealer was living at the address, how the CI was aware a woman had been traded for drugs, or when these transactions were occurring. Still, a CI's past

reliability is a component of the "totality of the circumstances" test. *Lovett v. Commonwealth*, 103 S.W.3d 72, 77 (Ky. 2003).

When an officer is providing information for a search warrant about a CI, it is that officer's duty to outline his or her basis for the belief that the CI is reliable, or how the CI has proven to be reliable in the past. "An officer's statement that 'affiants have received reliable information from a credible person and believe'" are inadequate to show probable cause. *Illinois v. Gates*, 462 U.S. 213, 239, 103 S. Ct. 2317, 2332-33, 76 L. Ed. 2d 527 (1983). "A mere statement that an informant is reliable, without more, is insufficient in and of itself to establish the informant's credibility for purposes of issuing a search warrant." *Commonwealth v. Baldwin*, 199 S.W.3d 765, 769 (Ky. App. 2006). But the CI in this case was not Detective Townsend's only source of information.

Detective Townsend also received information from an unnamed but identifiable woman, who claimed to have been recently inside Williams's residence. It is interesting to note that while Detective Townsend never gave the woman's name, Williams immediately knew, or claimed to know, who she was. He identified this woman as an ex-girlfriend, who he claims to have kicked out of the residence. While it was never conclusively stated if this woman was Detective Townsend's source of information, Williams's own testimony lends credence to

the conclusion that this woman had, in fact, been inside Williams's residence and was very familiar with it, including the drug activity going on inside the residence.

"When faced with a motion to suppress, a trial court judge must 'determine whether under the totality of the circumstances presented within the four corners of the affidavit, a warrant-issuing judge had a substantial basis for concluding that probable cause existed.'" *Minks v. Commonwealth*, 427 S.W.3d 802, 809 (Ky. 2014) (citing *Pride*, *supra*, at 49). We must determine if the warrant-issuing judge had probable cause *at the time the warrant* was signed. *See id.* at 810.

The circuit court was unaware of who the unnamed woman was until the suppression hearing. At the time the warrant was issued, it was believed she was a rape victim. And while she was not named in the affidavit, she was not an anonymous tipster or confidential informant. Detective Townsend knew her identity. She claimed to have been inside Williams's residence, and she claimed she had been there approximately seven days prior.

She was able to describe where cameras were located at the residence. She told Detective Townsend what type of drugs would be found in the home and where Williams typically hid them. "[W]hile a court may question an informant's motives, an explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles [the informant's] tip to

greater weight than might otherwise be the case." *Lovett*, *supra*, at 78 (internal quotation marks omitted).

Williams points out that there is no evidence of an investigation or charges brought due to the allegations of Williams's drugging and raping the unnamed woman as further evidence of her lacking in credibility. But "when a search warrant has been obtained, there is no reason for an evidentiary hearing to determine whether the facts alleged in the affidavit are actually true." *Minks*, *supra*, at 809. The question is not whether the rape allegations turned out to be true or not, the question is whether the information provided by Detective Townsend to the circuit court provided probable cause. Detective Townsend, as a detective assigned to a drug task force, testified that he had no part in any investigation into the alleged sexual assault. But he did note in his affidavit that the Grayson County Sheriff's Department was investigating the reported sexual crime.

This leads us to Detective Townsend's third source of information. Around the same time as the CI's report, Detective Townsend was contacted by local law enforcement to advise that two women reported a friend missing and believed to be at Williams's address. Because Detective Townsend was not involved in that investigation, the details are unclear. Yet a woman was located at

Williams's residence when the search warrant was executed, and she may have been under the influence of drugs.

Like the information obtained from the CI, this information from the two additional witnesses by itself might not be adequate to support probable cause. But this became the third report in a relatively short time frame in which Williams's address was brought to the attention of Detective Townsend regarding drug-related activity. As far as can be determined from the record, these three reports were all made independently of one another. Taken together, this information was enough to show "a fair probability that contraband or evidence of a crime will be found" at Williams's residence. *Moore*, *supra*, at 329. In totality, the information was sufficient to support the circuit court's determination that probable cause existed to issue the search warrant. While the affidavit was not a perfect one, that is not required.

Additionally, we agree with the circuit court and the Commonwealth that even if probable cause was not established to support the issuance of the search warrant, the good faith exception applies, rendering the seized evidence admissible.

The "good faith exception" was outlined by the United States Supreme Court in *United States v. Leon*, 468, U.S. 897, 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984). The Supreme Court determined that the Fourth Amendment

-12-

exclusionary rule should not automatically be applied to bar the prosecution's

evidence obtained by law enforcement officers who acted in reasonable reliance on

a search warrant issued by a detached and neutral magistrate but was ultimately

ruled invalid. *Id.* The Supreme Court of Kentucky applied this exception in

*Crayton v. Commonwealth*, 846 S.W.2d 684 (Ky. 1992), determining the good

faith exception did not violate Section 10 of Kentucky's Constitution. *Crayton*

stated:

> There is a popular but erroneous belief that the *Leon* Court eviscerated the exclusionary rule when the evidence is obtained pursuant to a search warrant. In fact, the Court held that the officer must have an objectively reasonable belief in the sufficiency of the warrant and the probable cause determination. If the affidavit contains false or misleading information, the officer's reliance cannot be reasonable. Likewise, the Court retained the exclusionary rule and applied no presumption of validity in cases of abandonment by the judge of a detached and neutral role, and in cases where the officer's belief in the existence of probable cause is entirely unreasonable. Finally, suppression was retained as a remedy where the warrant is facially deficient by failing to describe the place to be searched or the thing to be seized. In sum, the court imposed a standard of objective reasonableness on police activity and retained the suppression remedy when police conduct falls below that standard.

*Id.* at 687-88.

> Said otherwise, a technically defective search warrant obtained in good faith after proper application to a judicial officer is preferable to an unsupervised and potentially fraudulent warrantless search. We therefore

> hold that application of a good faith exception to the warrant requirement, as articulated in *United States v. Leon*, *supra*, does not violate Section 10 of the Constitution of Kentucky.

*Id.* at 688-89.

Williams argues the good faith exception should not apply here. His argument reiterates his claim that the affidavit was so lacking in probable cause that it was unreasonable to rely upon it. Despite his initial motion being for a *Franks* hearing, the only information in the affidavit Williams claims is "false or misleading" is the motive behind the unnamed woman's report to Detective Townsend. He makes no allegations that Detective Townsend knew or had reason to know any of the information in his affidavit was false. There has been no suggestion that the issuing judge in this instance abandoned his "detached and neutral" judicial role. The warrant adequately described the "place to be searched and the thing to be seized."

As we've discussed in detail, Detective Townsend relied on information provided to him by three separate sources that illegal drug activity was occurring at Williams's residence. Even if the probable cause had been just on the dividing line for enough evidence to sustain a warrant, we do not believe the officer's belief in the existence of probable cause in this case was entirely unreasonable. "[W]here evidence is sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause, it cannot be

-14-

said that police officers who provide a truthful affidavit to a neutral magistrate who then issues a warrant are not objectively reasonable in believing that they have probable cause." *Beckam*, *supra*, at 551 (citing 29 AM.JUR.2D *Evidence* § 616 (2008)).

## CONCLUSION

The search warrant was properly supported by probable cause. We further determine that, even if the warrant was deficient, Detective Townsend reasonably relied on the issuance of the warrant, and therefore the good faith exception would apply. The Grayson Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Erin Hoffman Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky